# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | No. 2:10 CR 17 |
| GEORGE PABEY | ) | |

## OPINION AND ORDER

Defendant George Pabey ("Pabey") has filed a motion requesting that this court order his release on bond pending his appeal. (DE # 108.) For the reasons given below, this motion will be **denied**. In brief, Pabey, the former mayor of East Chicago, was convicted of conspiracy to steal government funds from the City of East Chicago while he was mayor by using city funds and city workers to make improvements to a home he owned in Gary, Indiana. (DE ## 1, 75.)

## I. STANDARD OF REVIEW

Pursuant to 18 U.S.C. § 3143, a defendant can be released on bond pending appeal if a judicial officer finds 1) by clear and convincing evidence that the defendant is not likely to flee or pose a danger to the community, and 2) that the appeal is "not for the purpose of delay and raises a substantial question of law or fact likely to result in" i) reversal, ii) an order for a new trial, iii) a sentence that does not include a term of imprisonment, or iv) "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."

## II. ANALYSIS

To begin, the court accepts that Pabey is unlikely to flee and does not pose a danger to his community. The defense has submitted twenty-eight letters of support

from Pabey's friends, family members, and members of his religious community, that evince strong ties to the community. (DE # 97.) Further, Pabey's probation officer found that Pabey had lived in Lake County all of his life and many of his family members live in East Chicago. (Presentence Investigation Report ¶¶ 48-53.) Pabey was not convicted of a violent crime and had no prior criminal history. (*Id.* ¶¶ 7, 98.) The probation department found that Pabey did not pose any risk of danger to the community. (Pretrial Services Report 3.) It follows that the court finds by clear and convincing evidence that Pabey does not present a flight risk or a danger to the community. It also does not appear that the appeal will be raised for the purpose of delay.

Accordingly, the focus of this analysis is on whether Pabey's proposed appeal will raise a substantial question of law or fact that is likely to result in a new trial or reversal. The court must first decide if a proposed argument raises a "substantial question" of law or fact. Under the United States Court of Appeals for Seventh Circuit's case law interpreting Section 3143(b), a "substantial question" is one that can be described as "a toss up or nearly so," "a close question," or "one that could be decided the other way." *United States v. Shoffner,* 791 F.2d 586, 589 (7th Cir. 1986); *United States v. Greenberg,* 772 F.2d 340, 341 (7th Cir. 1985). If the court finds that an argument raises a substantial question, it must then decide whether the question is one that is "so integral to the merits" that if it was decided in the defendant's favor, the appellate court is more likely than not to reverse the conviction or order a new trial. *United States v. Bilanzich*, 771 F.2d 292, 298-299 (7th Cir. 1985) ("whether a question is 'substantial' defines the

2

*level of merit* required in the question presented and 'likely to result in reversal or an order for a new trial' defines the *type of question* that must be presented") (emphasis in original) (internal quotations omitted).

The only argument that Pabey identifies that he will make on appeal that he contends presents substantial questions of law or fact is that the conscious avoidance instruction, commonly known as the ostrich instruction, was improperly included in the definition of knowledge given to the jury. (DE # 108-1 at 1.)

Court's Instruction Number 32 defined "knowingly" to include purposeful avoidance. In comport with Seventh Circuit Pattern Jury Instruction 4.06, the instruction read:

> You may infer knowledge from a combination of suspicion and indifference to the truth. If you find that a person had a strong suspicion that things were not what they seemed or that someone had withheld some important facts, yet shut his eyes for fear of what he would learn, you may conclude that he acted knowingly, as I have used that word. You may not conclude that the defendant had knowledge if he was merely negligent in not discovering the truth.

This instruction informs the jury that "it may look at a charade of ignorance as circumstantial proof of knowledge." *United States v. Stone*, 987 F.2d 469, 472 (7th Cir. 1993). Pabey does not contest the formulation of the instruction; rather he argues that it was not appropriate to give this instruction in his case.

Inclusion of the ostrich instruction is only appropriate when "the defendant claims a lack of guilty knowledge and there are facts and evidence that support an inference of deliberate ignorance." *United States v. Herrero,* 893 F.2d 1512, 1538

3

(7th Cir. 1990) (internal quotations omitted). In determining whether the ostrich instruction was appropriate, an appellate court will review all of the "evidence and any reasonable inference from that evidence in the light most favorable to the government." *United States v. Talkington*, 875 F.2d 591, 596 (7th Cir. 1989).

The effort to avoid guilty knowledge through deliberate ignorance can be either physical or mental by a cutting off of one's normal curiosity by an effort of will. *United States v. Giovannetti*, 919 F.2d 1223, 1227-29 (7th Cir. 1990). In the latter situation:

> There is no need to search in vain for an "act" that occurred in the veiled isolation of a defendant's psyche. The focus is on what the defendant knew and whether the defendant knew enough to support an inference that he or she remained deliberately ignorant of facts constituting criminal knowledge.

*United States v. Carrillo,* 435 F.3d 767, 781 (7th Cir. 2006). A finding of psychological avoidance may be particularly likely in a case in which "circumstantial evidence suggests that the defendant possessed enough information to prompt further investigation, but he did not delve for fear of what he might learn." *United States v. Stone,* 987 F.2d 469, 472 (7th Cir. 1993). The ostrich instruction is only appropriate if the evidence shows that the defendant affirmatively acted to avoid learning the truth; evidence showing only failure to display curiosity does not warrant the ostrich instruction. *United States v. L.E. Myers Co.*, 562 F.3d 845, 854 (7th Cir. 2009) (citing *Giovannetti,* 919 F.2d at 1228). Similarly, the Seventh Circuit has stated that evidence of deliberate *indifference* is not sufficient to support the inclusion of the ostrich instruction; instead, the evidence must show deliberate *avoidance* on the part of a defendant. *United*

*States v. L.E. Myers Co.*, 562 F.3d 845, 854 (7th Cir. 2009); *United States v. Ramirez*, 574 F.3d 869, 879 (7th Cir. 2009).

The Seventh Circuit has repeatedly stated that ostrich instructions are "principally employed" in situations, like the one at hand, in which there is evidence that a defendant is associated with a group and was consciously avoiding knowledge of the group's illegal activity, and the defendant acknowledged his association with the group but denied knowledge of its illegal activity. *Herrero,* 893 F.2d at 1538 (internal quotations omitted).

Pabey argues that the ostrich instruction was not properly tendered because the evidence did not show that "he deliberately cut off his curiosity in an effort to remain ignorant of guilty knowledge." (DE # 108-1 at 3.) He contends that while the evidence may show that he exhibited a deliberate indifference to the facts, that is insufficient to warrant the ostrich instruction. (*Id*.) The defendant states that he claimed a lack of guilty knowledge, (DE # 108-1 at 2); so the court's analysis will focus on the second prong for the propriety of the ostrich instruction - whether the evidence supported an inference of deliberate avoidance. The evidence presented at trial, viewed in the light most favorable to the government as required, supports an inference that Pabey purposely avoided knowledge of the illegal activity undertaken to improve his house in Gary, Indiana.

First, as this court pointed out when it overruled Pabey's objection to the ostrich instruction at trial, the evidence showed that Pabey knew the people who were working in his home in the City of Gary, knew that they were employees of the City of East

5

Chicago, and saw these people working on his home in the City of Gary during work hours. East Chicago employee Stojan Novakavic testified that he saw Pabey at the Gary house three or four times in total and two or three times while he was painting during the workday. (Novakavic, Trial Tr., Vol. I. p. 470-72). He testified that Pabey saw him painting the house during the workday and that Pabey greeted him and knew he was a city worker. (*Id.* at 472-73.) He also testified that Pabey did not ask him if he was taking comp time or vacation time to work on the house and did not offer to pay him. (*Id.* at 473-74.) Novakovic testified that he was present at the house during work hours when Pabey came to the house to check the progress. (Novakavic, Trial Tr., Vol. I. p. 473.)

Angel Acosta, who was a city worker working at the house during his comp time, testified that Pabey came by the Gary house some days during the workday when Jose Camacho, a city worker and Pabey's co-conspirator, was there. (Angel Acosta, Trial Tr., Vol. 2, p. 405.) Pabey's wife also testified that she and Pabey went to Home Depot with Camacho at 1:30 p.m. on a workday and rented a sander. (Hilda Luz Pabey, Trial Tr., Vol. 3, p. 743.) She testified that right after that, they went to the Gary house and Camacho began sanding. (*Id.* at 744.)

Further, there was not any evidence that Mr. Pabey paid any of the men for the time they spent working on his house. And there was only evidence that he ever offered to pay one of the city workers, Edward Bittner, for part of his time repairing the air conditioner at the Gary house, but that Bittner refused. (Edward S. Bitner, Trial Tr.,

6

Vol. 3, 512-13.) There was also evidence that Pabey saw Novakavic painting his house on several occasions and did not offer to pay him . (Novakavic, Trial Tr., Vol. I. p. 472-75.) Thus the evidence showed that Pabey saw city workers at the home during the work day and he did not offer to pay them or ask them if they were being paid by the city at that time.

Second, the government presented evidence that items in the home were purchased through City of East Chicago funds, that many of the items were prominent within the home, and that Pabey visited the home once the items were installed. For example, as the government pointed out during the jury instruction conference, City of East Chicago funds which were used to purchase the front storm door to Pabey's Gary house. (Trial Tr., Vol. 4, p. 827.) Entry storm doors and interior doors were purchased by Camacho on the City of East Chicago's Menards account. (Amy Blaker, Trial Tr., Vol. 1, p. 142, 152, 158-59, 161.) The evidence showed that identical doors were installed throughout Pabey's house in Gary including the basement bathroom, the entry from the basement to the garage, and the entries at the front and rear of the home. (Donald H. Cooley, Trial Tr., Vol. 2, p. 232, 243, 253, 287-88.) The Pabeys did not produce receipts for the doors. (*Id.* at 361, 253, 287-88.)

The evidence also showed that ceramic floor tile, towel bars, and a toilet paper holder were bought by Camacho on the City of Chicago's account at Menards. (Amy Blaker, Trial Tr., Vol. 1, p. 170-71.) A box of identical floor tile was found in the laundry room of Pabey's Gary house. (Donald H. Cooley, Trial Tr., Vol. 2, p. 268.) Identical

7

towel bars and an identical toilet paper holder were found in the basement of the Gary House. (*Id.* at 276.) The evidence also shows that Camacho bought a bathtub on the City of East Chicago's Menards account, that an identical bathtub was installed in the main floor of the Gary house, and that the Pabeys did not produce a receipt for that bathtub. (Cooley, Trial Tr., Vol. 2, p. 239-40, 244; Hilda Luz Pabey, Trial Tr., Vol. 3, p. 750.) Thus items were installed into the Pabey's home without him paying for them. This is just some of the evidence that the government produced of items purchased with City of East Chicago funds were installed in Pabey's home.

Third, there was testimony from Charles Parcurer who was the controller for the City of East Chicago when Pabey was mayor. (Charles Parcurer, Trial Tr., Vol. 3, p. 611.) Parcurer testified that Pabey "is very, very attentive to what projects [the city has] going on. He's also very attentive to what departments are providing in way of service for the city." (*Id.* at 637.) This evidence shows that Pabey was ordinarily very involved in how city resources were being utilized.

Thus, there was evidence that Pabey received multiple financial benefits from City of East Chicago funds.[1] Even though there was evidence that Pabey was usually

---

[1] In *United States v. Black*, the Seventh Circuit explained that when a defendant accepts money that he has no reason to think he is entitled to, he has a duty to investigate why he received the money. 530 F.3d 596, 604-605 (7th Cir. 2008). By shutting his eyes to the source of the money, the person has "tacitly confessed [his] all-but-certain knowledge that [he was] stealing the money." *Id.* at 605. This case was later vacated and remanded by the Supreme Court in *Black v. United States*, 130 S.Ct. 2963 (2010), on other grounds. Still the court's reasoning that a person has reason to know that he should investigate the source of financial benefits that he should suspect he is not entitled to applies in this case.

very attentive to how city resources were expended, there was no evidence that he asked where these specific items came from or why East Chicago workers were present at his home in the City of Gary during the workday. As explained above, Pabey did not question Novakovic about why he was at Pabey's house in the City of Gary during the workday. Pabey's failure to ask these questions supports a finding that he was deliberately avoiding knowledge of the illegal source of the improvements done to his house. *United States v. Leahy,* 464 F.3d 773, 796 (7th Cir. 2006) (finding that the defendant's failure to ask questions about audit problems was evidence of active avoidance of the truth); *United States v. Craig,* 178 F.3d 891, 897-98 (7th Cir. 1999) (stating that the failure to ask questions that would naturally arise from the circumstances can be taken as evidence of efforts to avoid the truth).

A jury could conclude that Pabey's knowledge of the improvements made to his home without payment raised Pabey's suspicion that the items were being paid for by the city and that the workers, who he saw during the workday, were being paid by the City of East Chicago while they worked at his home in Gary. *Cf. United States v. Broeske*, 178 F.3d 887, 890 (7th Cir. 1999) (finding that the defendant's suspicion should have been raised when her sister suddenly acquired a "large sum of money," $900, in fifty dollar bills); *United States v. Graffia,* 120 F.3d 706, 713 (7th Cir. 1997) (finding that the defendants should have been prompted to investigate the legitimacy of a bank when the initial balance sheet for the bank listed "$4 billion in assets and only $43,000 in liabilities").

In sum, the evidence described above, could easily support a finding that Pabey was aware of facts showing that City of East Chicago funds were being used to improve his house in Gary but he failed to investigate for fear of what he would learn. As mentioned above, there was evidence from the city controller that Pabey was usually attentive to where city services were directed. From this evidence, a rational jury could find that Pabey "must have forced [his] suspicions aside and deliberately avoided confirming that he was engaged in criminal activity." *United States v. Garcia,* 580 F.3d 528, 537 (7th Cir. 2009); *see e.g., United States v. Neville*, 82 F.3d 750, 760 (7th Cir. 1996) (finding that the defendant's failure to question patently false letters could support a claim of deliberate indifference).

Because the court does not find that the inclusion of the ostrich instruction raises a substantial question for appeal, it does not need to determine whether this is the type of issue that would be likely to result in a reversal or new trial. Consequently, Pabey's motion to be released on bond pending appeal is **DENIED**. (DE # 108.)

**SO ORDERED.**

Date: May 20, 2011

s/James T. Moody_____
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT